UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

FADREA JONES,

            Plaintiff,

    -vs-

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF
SOCIAL SECURITY

            Defendant.

_____

**DECISION AND ORDER**
**No. 13-CV-06443(MAT)**

## INTRODUCTION

Plaintiff Fadrea Jones ("Plaintiff" or "Jones"), filed this action, pursuant to the Social Security Act ("the Act"), codified at 42 U.S.C. §§ 405(g) and 1383(c), seeking review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant"), denying her application for Supplemental Security Insurance ("SSI").

Currently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  For the reasons set forth below, I grant the Commissioner's motion, deny the Plaintiff's motion, and dismiss the Complaint.

## PROCEDURAL HISTORY

On August 17, 2010, Fatiha Jones filed an application for SSI on behalf of her then-17 year old daughter Fadrea Jones, alleging disability as of August 11, 2010 due to optic atrophy, headaches, and Brown's Syndrome.  The application was denied.  Administrative

Transcript [T.] 58, 192-194.  A hearing was held on January 17, 2012 before administrative law judge ("ALJ") Stanley K. Chin. Plaintiff, her mother, and a vocational expert ("VE") testified at the hearing.  T. 21-57.  On January 27, 2012, the ALJ issued a decision finding that Plaintiff was not disabled from August 17, 2010, the date of her SSI application, to January 27, 2012, the date of the ALJ's decision.  T. 59-82.

On June 21, 2013, the Appeals Councils denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  T. 1-5.  This action followed.

## FACTUAL BACKGROUND

Plaintiff was born in 1993 and was 18 years old at the time of the administrative hearing.  T. 28.  Plaintiff testified that her vision problems, asthma and depression prevent her from working full time.  T. 29-30.  Also at the hearing, Plaintiff's mother testified, as did a vocational expert.  T. 49-53.

**Evidence Prior to the Relevant Time Period**

School records from 2002 show that Plaintiff was "functioning with the average range of cognitive ability."  T. 317.

In 2005, Patricia Markus ("Markus"), Special Education and TBI Consultant for MATCH Team for the Rochester City School District, completed an Assistive Technology Assessment Report in which she indicated that Plaintiff "does not appear to be a good candidate for assistive technology."  Markus noted that Plaintiff was non-compliant " with any strategy or tool that makes her look different

from her peers." Markus made a recommendation to help Plaintiff with keyboarding skills, and also suggested that the school "look at possibly giving her some curricular and testing modifications." T. 316.

In September 2006, Plaintiff met with her primary care physician Andre Jacobs-Perkins, M.D., who provided her with a note for school indicating that she had mild asthma and exotropia of the eye, but that she was physically qualified to participate in sports or use the playground. T. 257.

From October 2009 to January 2010, Plaintiff underwent treatment at Rochester Mental Health Center ("RMHC"). On October 5, 2009, Plaintiff reported to Kelly Schmidt ("Schmidt"), LMSW, that she cried frequently and was sad when thinking about her father with whom she had no contact. T. 345. Schmidt diagnosed mood disorder, and assessed Plaintiff's global assessment of functioning ("GAF") at 65. T. 346. Schmidt reported that Plaintiff had "no disability." T. 347. At subsequent follow-up visits, Plaintiff's GAF score remained 65. T. 358, 362, 364. Plaintiff was discharged from treatment on January 19, 2010 because her mother did not believe that Plaintiff needed consistent appointments. T. 362-363.

**Evidence from August 17, 2010 to January 27, 2012**

On November 30, 2010, Plaintiff saw Gary D. Markowitz, M.D., and reported that Plaintiff was "seeing well," that she was wearing

her glasses full time, and that her vision was 20/70 in one eye and 20/125 in the other eye.   T. 334.

On December 14, 2010, Dr. Markowitz diagnosed Plaintiff with optic atrophy, extropia, myopia, and astigmatism.   T. 307.   At that time, Dr. Markowitz indicated that he was unable to provide a medical opinion regarding Plaintiff's ability to do work-related activities.   T. 309.

On December 20, 2010, Plaintiff also saw Elizabeth Harvey, OD, who assessed that Plaintiff had a moderate impairment in her right eye and a severe impairment in her left eye.   T. 312.   Dr. Harvey prescribed a monocular telescope to be used by Plaintiff on the right eye for seeing at a distance, and advised her to continue to use a hand-held magnifier for fine print in the classroom and to enlarge the font size of her computer.   T. 313.

In January 2011, state agency pediatrician R. Mohanty, M.D. reviewed the evidence in the file and opined that Plaintiff had no limitation in acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, and caring for herself.   T. 326-327.   Dr. Mohanty opined that Plaintiff had a marked limitation in health and physical well-being in light of her congenital eye impairment.   T. 327.

On March 11, 2011, Plaintiff saw Dr. Markowitz for a follow-up visit, at which time Plaintiff reported that her new eyeglass prescription was working well but that she experienced one episode

of eye pain when looking overhead.  T. 373.  He reported that Plaintiff's vision was 20/70 in one eye and 20/100 in the other eye.  He also reported no ptosis.  On March 15, 2011, Dr. Markowitz reported that Plaintiff's exam showed stable left extropia.  He discussed with Plaintiff and her mother having an optional additional surgery to repair Plaintiff's strabismus, and Plaintiff and her mother elected to proceed with the surgery.  T. 374.

Also in March 2011, Plaintiff saw nurse practitioner Karen McMurty ("McMurty") for asthma related issues.  McMurty noted that Plaintiff reported that she was doing well and only occasionally use Albuterol, although she had experienced a cough and wheeze in the prior two weeks.  T. 386.  A pulmonary function test showed that Plaintiff had "significant improvement" with bronchodilator and that Plaintiff reported feeling much better.  McMurty started Plaintiff on Advair, and instructed Plaintiff to call if her symptoms worsened or did not improve.  T. 387.

Plaintiff underwent eye surgery in April 2011, after which Dr. Markowitz reported that her eye alignment looked better.  T. 377.  Her vision in one eye was 20/70 and the other eye was 20/125. No ptosis was reported.  Dr. Markowitz noted that Plaintiff could resume gym/sports on May 4, 2011.  T. 378.  No significant findings were reported at subsequent follow-up appointments throughout May 2011.  T. 381.

In December 2011, Dr. Jacobs-Perkins completed a NYS disability assessment form in which he assessed that Plaintiff had

optic nerve hypoplasia, chronic depression, and asthma.   T. 394.
Dr. Jacobs-Perkins opined that Plaintiff had no limitation in the
areas of moving about and manipulating objects, and moderate
limitation in the areas of interacting and relating with others,
caring for herself.   He reported "moderate limitations" with
respect to Plaintiff's health and physical well-being but also
indicated that he "would defer to opthamologist."   T. 398.   With
respect to the areas of acquiring and using information and
attending and completing tasks, he indicated that Plaintiff's
limitations were "unknown."   T. 398.   He also opined that Plaintiff
had no limitation in lifting and carrying, sitting, standing and/or
walking, and pushing and/or pulling.   He noted that Plaintiff
needed a magnifying glass to read, and could not use public
transportation because she could not read bus numbers.   T. 409.

Also in December 2011, Dr. Markowitz completed a Vision
Impairment RFC Questionnaire.   T. 402.   He assessed that
Plaintiff's vision in both eyes was 20/100 and reported that
Plaintiff saw well and had no symptoms during her last visit with
him in August 2011.   T. 400.   Dr. Markowitz indicated that
Plaintiff's visual limitations in competitive work situations was
"unknown."   T. 400.

## DISCUSSION

## I. Jurisdiction and Scope of Review

42 U.S.C. § 405(g) grants jurisdiction to district courts to
hear claims based on the denial of Social Security benefits.   The

section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).

Section 405 (g) limits the scope of the Court's review to two inquiries: determining whether the Commissioner's findings were supported by substantial evidence in the record as a whole, and whether the Commissioner's conclusions are based upon an erroneous legal standard. Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003); see also Mongeur, 722 F.2d at 1038 (finding a reviewing court does not try a benefits case de novo).

Under Rule 12(c), judgment on the pleadings may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988). A party's motion will be dismissed if, after a review of the pleadings, the Court is convinced that the party does not set out factual allegations that are "enough to raise a right to relief beyond the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

## II.   The Commissioner's Decision Denying Plaintiff Benefits is Supported by Substantial Evidence in the Record

The ALJ evaluated Plaintiff's claim for benefits under the disability standards for both adults and children because Plaintiff's SSI application was filed before Plaintiff's 18th birthday T. 66-77.

### A.   The Disability Standard for Children

The statutory standard for children seeking SSI benefits based on disability is

> [a]n individual under the age of 18 shall be considered disabled for the purposes of this title if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 1382c(a)(3)(C)(1).

In evaluating disability claims in children, the Commissioner is required to use the three step process promulgated in 20 C.F.R. §§ 416.924. First, the Commissioner must determine whether the claimant is engaged in any substantial gainful activity. Second, if the claimant is not so engaged, the Commissioner must determine whether the claimant has a "severe impairment" or combination of impairments. Third, the Commissioner must determine whether the impairment or combination of impairments correspond with one of the conditions presumed to be a disability by the Social Security Commission, that the impairment(s) met, medically equaled or

-8-

functionally equaled the severity of an impairment in the listings. 20 C.F.R. § 416.924.

Here, the ALJ followed this three-step procedure and determined that Plaintiff was not disabled.   The ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the application was filed; (2) had the severe impairments of strabismus and optic nerve hypoplasia; and (3) did not have an impairment that meets or equals one of the Listed Impairments listed in Appendix 1, Part A or B, or functionally equaled the severity of an impairment in the Listings.   T. 70-74.

## B.   The Disability Standard for Adults

The Social Security Administration has promulgated a five-step sequential analysis that the ALJ must adhere to for evaluating disability claims for adults.   20 C.F.R. § 404.1520.   Pursuant to this inquiry:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Commissioner considers whether the claimant has a "severe impairment" which significantly limits his ability to do basic work activity. If the claimant has such an impairment, the Commissioner considers whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1, Part 404, Subpart P. If the claimant does not have a listed impairment, the Commissioner inquires whether, despite the claimant's impairment, he has the residual functional capacity to perform his past work. If he is unable to perform his past work, the Commissioner determines whether there is other work which the claimant can perform.

Berry v. Schweiker, 675 F.2d 464, 466-67 (2d Cir. 1982).

The ALJ found that:  Plaintiff did not engage in substantial gainful activity since the date the application was filed;  that Plaintiff had the severe impairments of strabismus and optic nerve hypoplasia, but that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listed Impairments; that Plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with certain non-exertional limitations; and that, considering Plaintiff's age, education, work experience and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. Therefore, the ALJ concluded that Plaintiff was not disabled during the relevant period.  T. 77-78.

## III. Plaintiff's Arguments

### A.   Duty to Develop the Record and Evidence Submitted to Appeals Councils

At Point 1 of her supporting memo, Plaintiff claims that remand is warranted based on the following: (1) the ALJ failed to obtain updated education records (i.e., records from after March 2, 2005) at the time he issued his decision; and (2) that Plaintiff subsequently obtained said records and submitted them to the Appeals Council but they were rejected without adequate rationale. Dkt. No. 12-1 at Point 1.  The Court disagrees.

Although, as Plaintiff correctly points out, the ALJ has an affirmative obligation to develop the administrative record, Echevarria v. Sec'y of Health & Human Servs., 685 F.2d 751, 755

-10-

(2d Cir. 1982) (internal quotation marks and citations omitted), this duty is not without limit.  See Guile v. Barnhart, No. 5:07-cv-259, 2010 U.S. Dist. LEXIS 58423, 2010 WL 2516586, at *3 (N.D.N.Y. June 14, 2010).  Indeed, if all of the evidence received is consistent and sufficient to determine whether a claimant is disabled, further development of the record is unnecessary, and the ALJ may make his determination based upon that evidence.  See 20 C.F.R. § 416.920b(a).  Consistent with that notion, where, as here, there are no "obvious gaps" in the record, the ALJ is not required to seek additional information.  Rosa v. Callahan, 168 F.3d 72, 79 n.5 (2d Cir. 1999).

In this case, the ALJ had before him Plaintiff's medical treatment records, which included records from dates prior to and including the relevant time period.  The ALJ also had before him Plaintiff's educational records dating from 2002 to 2005. Additionally, in making his disability determination, the ALJ also had:  a Functional Assessment Form from State Agency pediatrician Dr. Mohanty from January 2011, several function assessment forms from Dr. Jacobs-Perkins from December 2011, and a Vision Impairment RFC Questionnaire from Dr. Markowitz from December 2011.  T. 324-329, 394-410.  In this instance, the record fails to disclose any critical gaps sufficient to trigger the ALJ's duty to develop the record by obtaining additional school records.  While Plaintiff asserts that the ALJ should have contacted Plaintiff's school to obtain supplemental records that post-date March 2, 2005, there is

no indication that such records would have provided any significant missing information.

Likewise, remand is not warranted with respect to Plaintiff's argument that the Appeals Council failed to adequately evaluate the "new and material evidence" submitted to it after the ALJ issued his decision. Dkt. No. 12-1 at 14. The Commissioner's decision to deny benefits does not become final until the Appeals Council either renders its decision or denies review, thereby adopting the decision of the ALJ. See 20 C.F.R. § 416.1481; Perez v. Chater, 77 F.3d 41, 45 (2d Cir. 1996). In making its determination, the Appeals Council must review all the evidence in the administrative record and any additional evidence received. See 20 C.F.R. § 416.1479. Social Security regulations allow a claimant to submit additional evidence to the Appeals Council in support of the Request for Review. See 20 C.F.R. §§ 416.1470(b), 416.1476(b)(1). The Appeals Council must accept the evidence so long as it is new, material, and relates to the period on or before the date of the ALJ's decision. See id. If the evidence does not relate to the relevant time period, the Appeals Council must return the evidence to the claimant, issue an explanation why it was not accepted, and advise the claimant of the right to file a new application. 20 C.F.R. § 416.1476(b)(1). Additional evidence accepted by the Appeals Council becomes part of the administrative record and should be considered by a reviewing court. See Perez, 77 F.3d at 45.

In this case, it appears that Plaintiff submitted education records from Rochester City School District dated March 5, 2012 through June 22, 2012, as well as treatment notes from Association for the Blind ABVI dated March 12, 2013. T. 2, 6-9. The Appeals Council, in compliance with the relevant regulations, rejected this evidence, explaining that "[t]he [ALJ] decided your case through January 27, 2012. This new information is about a later time. Therefore, it does not affect the decision about whether you were disabled beginning or before January 27, 2012." T. 2.

However, as Plaintiff points out, on the June 21, 2013 form titled "Order of Appeals Council," the Appeals Council states, in relevant part, that it "received additional evidence, which it is making part of the record. That evidence consists of the following exhibits: Ex. 15E Education records from Rochester City School District dated May 16, 2005, through December 27, 2011." T. 5. While this evidence is currently located in the record at pages 242-290, it is unclear whether it was ever actually submitted to and/or reviewed by the Appeals Council.

Nonetheless, there is no reasonable probability that the Appeals Council (or the ALJ for that matter) would have reached a different result if the administrative record contained this additional evidence for several reasons. First, the majority of these records (i.e., those from May 16, 2005 up to August 16, 2010) pre-date the relevant time period. Second, these records do little, if anything, to support Plaintiff's claim that she is

disabled.  Plaintiff points out that "the new and material evidence contains multiple report cards indicating deficient grades and regents test scores." Dkt. No. 12-1 at 15.  While these records do reflect that Plaintiff received some "F" grades and low test scores, they also indicate that, over time, Plaintiff's grades improved and she generally received A-C grades.  These records also show that Plaintiff was reported as having either met or "partially" met the standards for New York State and the school district.  T. 255-256, 274-275, 281.   Plaintiff also maintains that these additional records undermine the ALJ's disability decision because they contain a note from Dr. Markowitz describing Plaintiff as having a visual "handicap." Dkt. No. 12-1 at 15.  The determination of whether a claimant is disabled, however, is "reserved to the Commissioner." 20 C.F.R. § 404.1527(e).

Accordingly, the Court finds no basis to remand Plaintiff's case because that the ALJ failed to develop the record and/or that the Appeals Council failed to adequately evaluate the "new and material evidence" submitted to it after the ALJ issued his decision.

**B.    The Opinion Evidence in the Record**

At Point 2, Plaintiff argues that the ALJ failed to properly weigh the opinion evidence in the record.  Specifically, he claims that the ALJ erred in:  (1) relying on the opinion of State Agency physician Mohanty because his opinion was "stale"; (2) failing to incorporate all of the limitations contained in the opinions of

treating physicians Markowitz and Jacobs-Perkins; and (3) failed to develop the record with respect to Plaintiff's non-exertional limitations. Dkt. No. 12-1 at Point 2. The Court rejects Plaintiff's contentions for the reasons that follow.

**(1) Dr. Mohanty's Opinion**

With respect to Plaintiff's first argument, the record shows, as Plaintiff correctly points out, that Dr. Mohanty reviewed the medical evidence in the record and rendered his opinion in January 2011 –- one year before the ALJ issued his disability decision. T. 325. Plaintiff claims that Dr. Mohanty's opinion is "stale" and does not establish substantial evidence because it was rendered "prior to the submission of most of the medical and educational evidence." Dkt. No. 12-1 at 16. Plaintiff, however, has failed to establish how Plaintiff's condition deteriorated after Dr. Mohanty's report. In fact, the record reflects that Plaintiff's condition generally remained the same after January 2011, and that her eyesight actually improved. For example, after her April 2011 eye surgery, Dr. Markowitz reported that Plaintiff's eye alignment looked better and that she could resume gym and sports in early May 2011. At subsequent follow-up appointments with Dr. Markowitz, Plaintiff reported that she had no concerns, and Dr. Markowtiz noted that Plaintiff's diplopia was "stable" and that Plaintiff had no evidence of eye turn. T. 379. On May 24, 2011, Dr. Markowitz noted that Plaintiff's eyes were appropriately aligned, and that Plaintiff's conjunctiva was mildly inflamed in

the left eye but that he expected it to improve.  T. 381.  As a final matter, the Court notes that, the opinion of a state consultative physician can constitute substantial evidence where, as here, the opinion is consistent with the other evidence in the record.  Said evidence, which the ALJ exhaustively summarized in his decision, shows that while Plaintiff suffered from some physical and mental impairments, these impairments, singularly or in combination, did not significantly limit her functional abilities and/or ability to perform work.

### (2) The Opinions of Treating Physicians Markowitz and Jacobs-Perkins

Next, Plaintiff argues that while the ALJ afforded the opinions of Plaintiff's treating physicians Markowitz and Jacobs-Perkins "great weight," he erred by failing to incorporate all of the limitations contained in the opinions into his functional equivalence and RFC findings, or to explain why he rejected them. Dkt. No. 12-1 at 19-20.  The "treating physician rule" requires an ALJ "to grant controlling weight to the opinion of the claimant's treating physician if the opinion is well supported by medical findings and is not inconsistent with other substantial evidence." Rosado v. Barnhart, 290 F. Supp. 2d 431, 438 (S.D.N.Y. 2003) (citing 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2)).  In this case, the ALJ properly took into consideration the opinions of treating physicians Markowitz and Jacobs-Perkins -- to the extent their opinions were internally consistent and consistent with the record

as a whole -- when considering the severity of Plaintiff's mental and physical impairments and the functional limitations resulting therefrom.  See, e.g., Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.") (citing Richardson v. Perales, 402 U.S. 389, 399 (1971)).

Plaintiff asserts that "Dr. Markowitz noted clinical findings of headaches, and the ALJ failed to find headaches to be a severe impairment at Step 2 or incorporate any non-exertional limitations into the RFC finding."  Dkt. No. 12-1 at 20.  This argument is meritless because Dr. Markowitz's clinical finding of "headaches" was not a stand-alone finding, but rather was related to Plaintiff's eye impairments and associated squinting.  T. 307.  At Step 2, the ALJ explicitly discussed Plaintiff's eye impairments and her functional limitations resulting from same.  T. 67-74.  Additionally, the ALJ accounted for Plaintiff's eye impairments in his RFC assessment by limiting her to occupations "which do not require near acuity."  T. 75.

Plaintiff also claims that the ALJ erred in failing to find Plaintiff's depression to be severe at Step 2, citing to Dr. Jacobs-Perkins' diagnosis of chronic depression.  Dkt. No. 12-1 at 20.  Relatedly, Plaintiff argues that the ALJ failed to take into account Dr. Jacobs-Perkins opinion that Plaintiff was "moderately limited" in the domain of interacting and relating with

others.  Dkt. No. 12-1 at 20 citing T. 394, 397.  The Court rejects

these arguments.  An impairment is severe if it causes more than

minimal functional limitations.  20 C.F.R. § 416.924(c).  As an

initial matter, Plaintiff did not claim depression as a disabling

impairment when she first applied for benefits.  Moreover, when

she testified at the administrative hearing about her depression,

she stated that she had received mental health treatment in the

past but was not currently being treated for any mental health

issues.  T. 42.  Plaintiff's mental health treatment notes from

January 19, 2010 show that Plaintiff was discharged from therapy

because her mother did not believe she needed to be seen on a

regular basis.  T. 362.  Furthermore, the ALJ thoroughly discussed

the evidence in the record -- including her diagnosis of chronic

depression (T. 68) -- and there is no indication that said

depression significantly limited her ability to function and/or do

basic work activities.  To the contrary, the evidence in the record

shows that Plaintiff was consistently assessed a GAF score of 65,

A GAF score between 61 and 70 equates to some "mild symptoms" or

some difficulty in social, occupational, or school functioning but

generally  functioning  pretty  well,  has  some  meaningful

interpersonal relationships.  See American Psychiatric Ass'n,

Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed.

2000).  Plaintiff's activities of daily living also belie the

notion that her depression significantly limited her ability to

function and/or do basic work activities.  For instance, as the ALJ noted in his decision, Plaintiff testified that, she can cook, clean, bathe and dress herself, has friends that come to visit her, and attends full-time regular classes at school.  She also testified that she helps take care of her brothers by ensuring they do not make a mess and by changing their diapers.  T. 68-69, 71-72. Thus, because the opinion of Dr. Jones-Perkins that Plaintiff was "moderately limited" in the domain of interacting and relating with others was inconsistent with the other evidence in the record as a whole, it was entirely proper for the ALJ to discount this particular portion of his opinion when assessing Plaintiff's functional limitations and/or her ability to perform work.

**(3) Additional Opinion Evidence**

Finally, Plaintiff claims that the ALJ failed to develop the record by obtaining an additional opinion from a consultative examiner and/or Plaintiff's treating physicians "with respect to Plaintiff's mental, non-exertional limitations despite allegations of a mental impairment."  As discussed above, an ALJ has an affirmative duty to develop the record.  However, the ALJ is not required to seek additional information where, as here, there are no obvious gaps in the record.  See Rosa v. Callahan, 168 F.3d 72, 79 n.5 (2d Cir. 1999).  In this case, the ALJ was able to make a determination about the severity of Plaintiff's depression and any functional limitations resulting therefrom based on the evidence

before him at the time. Specifically, that evidence included treatment notes from Drs. Jacobs-Perkins and Markowitz, the report of state agency physician Mohanty, as well as Plaintiff's treatment records from Rochester Mental Health.

The Court finds no ambiguity in the record which is fully developed and adequately reflects Plaintiff's medical history -- including her mental health history. The ALJ was under no duty to re-contact her treating physicians and/or obtain an additional consultative opinion with respect thereto. The ALJ considered the evidence before him, resolved inconsistencies in the record, and properly assessed the severity of Plaintiff's impairments and the functional limitations resulting therefrom.

In sum, the Court finds that the ALJ properly weighed the opinion evidence in the record and his severity and RFC determinations, as discussed in more detail below, are supported by substantial evidence.

### C. The ALJ's Functional Equivalence Finding and RFC Determination

At Point 3 of her supporting memo, Plaintiff challenges the ALJ's functional equivalence finding ("FEF") (under the child disability standard) and his determination that Plaintiff had the RFC to perform a full range of work at all exertional levels with certain limitations (under the adult disability standard). Dkt. No. 12-1 at Point 3. The Court rejects this claim.

**(1)  The ALJ's FEF**

Under the child disability standard, the ALJ found that Plaintiff no limitation in the domains of attending and completing tasks, interacting and relating with others, moving about and manipulating objects, and caring for herself.  He determined that Plaintiff had marked limitations in health and physical well-being. Accordingly, he found that Plaintiff was not disabled.  T. 71-74. The Court finds that the ALJ's FEF is supported by substantial evidence.

To determine whether an impairment or combination of impairments functionally equals the listings, the ALJ must assess the claimant's functioning in terms of the following six domains:

    (1) acquiring and using information;
    (2) attending and completing tasks;
    (3) interacting and relating with others;
    (4) moving about and manipulating objects;
    (5) caring for yourself; and
    (6) health and physical well-being.

See 20 C.F.R. § 416.926a(b)(1).

In making this assessment, the ALJ must compare how appropriately, effectively and independently the claimant performs activities compared to the performance of other children of the same age who do not have impairments.  20 C.F.R. § 416.926a(b).  To functionally equal the listings, the claimant's impairment or combination of impairments must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain.  20 C.F.R. 416.926a(d).

A child has a "marked" limitation in a domain when her impairment(s) interferes "seriously" with the ability to independently initiate, sustain, or complete activities. 20 C.F.R. 416.926a(e)(2). A child has an "extreme" limitation in a domain when her impairment(s) interferes "very seriously" with her ability to independently initiate, sustain, or complete activities. 20 C.F.R. 416.926a(e)(3).

In the domain of Health and Physical Well-Being, a marked limitation means frequent episodes of illness because of the impairment(s) or frequent exacerbations of the impairment(s) that result in significant documented symptoms or signs that occur:

> (a) on an average of 3 times a year, or once every 4 months, each lasting 2 weeks or more; (b) more often than 3 times in a year or once every 4 months, but not lasting for 2 weeks; or (c) less often than an average of 3 times a year or once every 4 months but lasting longer than 2 weeks, if the overall effect (based on the length of the episode(s) or its frequency) is equivalent in severity.

20 C.F.R. 416.926a(e)(2). An "extreme" limitation in this domain means there are episodes of illness or exacerbations that result in significant, documented symptoms or signs substantially in excess of the requirements for showing a "marked" limitation. 20 C.F.R. 416.926a(e)(2).

Plaintiff argues that, in arriving at his FEF, the ALJ erred by relying exclusively on the opinion of Dr. Mohanty and failed to discuss evidence that was contrary thereto. Dkt. No. 12-1 at 24-

25.  Initially, an ALJ is "responsible for reviewing the evidence and making findings of fact and conclusions of law." See 20 C.F.R. § 416.927(e)(2).  Further, the opinions of State consultants may be relied on by an ALJ, and their findings can constitute substantial evidence. See id.

In this case, the State consultant evidence from Dr. Mohanty was consistent overall with the treatment notes from Plaintiff's treating physicians, the clinical findings, the hearing testimony, and the other evidence of record.  Accordingly, this Court finds that the ALJ properly relied on the findings of State agency consultant Dr. Mohanty, who opined that Plaintiff had no limitations in any of the first three functional domains, and had marked limitations in the domain of health and well-being.

Moreover, the Court finds no merit to Plaintiff's related argument that the record supports a finding that Plaintiff's eye impairment is an "extreme" limitation (rather than a "marked" limitation) in the health and well-being domain.  Dkt. No. 12-1 at 24-25.  In determining that Plaintiff had a "marked" limitation in this area, the ALJ acknowledged that Plaintiff had vision problems (including congenital optic atrophy) and that she had undergone several eye surgeries, which had improved her eyes from "going out" but had  not improved her vision.  The ALJ noted that Plaintiff was unable to drive as a result of her eye impairments and that she needed a magnifying glass and glasses to aide in her vision.  The

-23-

ALJ also noted that Plaintiff complained of eye pain resulting from her eye impairments and that she took Tylenol for said pain. However, the ALJ also noted, after her eye surgery in April 2011, Plaintiff's eyes were appropriately aligned in the distance and that she had near fixation while wearing her glasses.  Thus, the Court finds that there is substantial evidence to support the ALJ's decision that Plaintiff does not have an "extreme" limitation in this domain.

In sum, the ALJ correctly found that Plaintiff's impairments did not result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. 416.926a(d).  As a result, Plaintiff's impairments did not functionally equal the Listings, and thus she was properly found not to be disabled.

### (2)  The ALJ's RFC Determination

Under the adult disability standard, the ALJ determined that Plaintiff retained the RFC to perform the full range of work at all exertional levels with the following limitations: "the claimant would need to avoid concentrated exposure to environmental irritants such as fumes, odors, dusts and gases, and poorly ventilated areas.  She would also be limited to occupations, which do not require near acuity."  T. 75.

A claimant's RFC represents an assessment of her "ability to do sustained work-related physical and mental activities in a work

setting on a regular and continuing basis. . . ." 20 C.F.R. § 404.1545(a)(1). The Regulations provide in pertinent part that the Commissioner "will assess [the claimant's] residual functional capacity based on all of the relevant medical and other evidence." 20 C.F.R. 416.945(a)(3). The Commissioner is not "permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion, or indeed for any competent medical opinion." Burgess v. Astrue, 537 F.3d at 128. "In assessing RFC, the ALJ's findings must specify the functions plaintiff is capable of performing; conclusory statements regarding plaintiff's capacities are not sufficient." Martone v. Apfel, 70 F. Supp.2d 145, 150 (N.D.N.Y. 1999) (citing, inter alia, Ferraris v. Heckler, 728 F.2d 582, 588 (2d Cir. 1984); Sullivan v. Secretary of Health & Human Servs., 666 F. Supp. 456, 460 (W.D.N.Y. 1987)).

Here, as the ALJ explained in his decision, Plaintiff's RFC was supported by the opinions and treatment records of physicians Jacobs-Perkins and Markowitz. Specifically, Dr. Jacobs-Perkins opined that Plaintiff had no limitation in lifting and carrying, sitting, standing and/or walking, and pushing and/or pulling. T. 409. In his December 16, 2011 assessment report, Dr. Jones-Perkins diagnosed Plaintiff with, among other things, strabismus optic nerve hypoplasia and opined that she needed a magnifying glass to read and had trouble reading bus numbers. T. 409. The

ALJ reasonably determined that Plaintiff could perform work, but was restricted to work that did not require visual acuity.

The opinion of Dr. Jacobs-Perkins was consistent with the other evidence in the record, including the treatment notes from treating eye physician Dr. Markowitz. T. 75. Although, as the ALJ noted, Dr. Markowitz indicated on his December 2011 assessment form that he could not provide a medical opinion regarding Plaintiff's work-related activities, his treatment notes consistently showed that Plaintiff was doing well following her 2011 surgery, her eye alignment was improving, and no significant findings were made. T. 309-400. Further, in his post-operative treatment notes, Dr. Markowitz assessed that Plaintiff could resume gym and sports in early May 2011. T. 379.

In reaching his RFC determination, the ALJ also took into account Plaintiff's asthma, which the evidence shows Plaintiff was diagnosed with and treated for during the relevant time period, by restricting Plaintiff to work that did not require concentrated exposure to environmental irritants, such as excessive dust, fumes, odors, gases and poorly ventilated areas. T. 75, 257, 386-387, 394.

Furthermore, there is no merit to Plaintiff's claim that the ALJ's RFC determination was flawed because it failed to incorporate limitations related to Plaintiff's fatigue and depression. Dkt. No. 12-1 at 27. As discussed above, Plaintiff did not claim

depression as a disabling impairment when she first applied for benefits, and she testified at the administrative hearing that was not currently being treated for any mental health issues. Additionally, there is no evidence in the record that Plaintiff's depression significantly limited her ability to perform work. Plaintiff's statements with respect to her daily activities also belie her contention that her chronic depression limits her ability to work. Accordingly, the ALJ reasonably found that Plaintiff had no limitations from a mental impairment, and his RFC determination is supported by substantial evidence.

### D. Plaintiff's Credibility

Plaintiff claims that the ALJ's credibility assessment is the product of legal error insofar as the ALJ: (1) improperly engaged in a credibility assessment calculated to conform to his RFC determination; (2) failed to discuss Plaintiff's testimony in its entirety, which supports greater limitations than those assessed by the ALJ; and (3) failed to make credibility findings regarding the testimony of Plaintiff's mother. Dkt. No. 12-1 at Point 4.

Here, the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that her statements concerning the intensity, persistence and limiting effects of the symptoms were not credible to the extent they were inconsistence with the RFC. T. 69, 75.

"The assessment of a claimant's ability to work will often depend on the credibility of her statements concerning the intensity, persistence and limiting effects of her symptoms." Otero v. Colvin, 12-CV-4757, 2013 U.S. Dist. LEXIS 37978, 2013 WL 1148769, at *7 (E.D.N.Y. Mar. 19, 2013).  Thus, it is not logical to decide a claimant's RFC prior to assessing her credibility.  Id. As Plaintiff correctly points out, this Court -- as well as others in this Circuit -- have found it improper for an ALJ to find a plaintiff's statements not fully credible simply "because those statements are inconsistent with the ALJ's own RFC finding." Ubiles v. Astrue, No. 11-CV-6340T (MAT), 2012 U.S. Dist. LEXIS 100826, 2012 WL 2572772, at *12 (W.D.N.Y. July 2, 2012) (citing Nelson v. Astrue, No. 5:09-CV-00909, 2010 U.S. Dist. LEXIS 90689, 2012 WL 2010 3522304, at *6 (N.D.N.Y. Aug. 12, 2010), report and recommendation adopted, 2010 U.S. Dist. LEXIS 90686, 2010 WL 3522302 (N.D.N.Y. Sept. 1, 2010); other citations omitted)). Instead, SSR 96-7p, 1996 SSR LEXIS 4 requires that "[i]n determining the credibility of the individual's statements, the adjudicator must consider the entire case record."  SSR 96-7p, 1996 SSR LEXIS 4, at *3, 1996 WL 374186, at *4 (S.S.A. July 2, 1996); 20 C.F.R. §§ 404.1529, 416.929.

Here, although the ALJ found that Plaintiff's statements were not fully credible to the extent they were inconsistent with his RFC finding, the ALJ measured Plaintiff's credibility by evaluating

the required factors bearing on her credibility prior to deciding Plaintiff's RFC.   Contrary to Plaintiff's contention, the ALJ thoroughly discussed Plaintiff's statements with respect to her medical history, her symptoms and related treatments, and her daily activities.   The ALJ determines issues of credibility and great deference is given his judgment.  Gernavage v. Shalala, 882 F.Supp. 1413, 1419, n.6 (S.D.N.Y. 1995).

Specifically, the ALJ noted Plaintiff's complaint that she is unable to work because of her vision problems.   He acknowledged that Plaintiff had undergone several eye surgeries, and that these surgeries were met with some success.   He also acknowledged her need for a magnifying glass and glasses to aide her vision.   He further noted Plaintiff's allegations that she has problems switching between seeing close up and far off, and has difficulty focusing.  T. 68.  However, the ALJ pointed out that Plaintiff also testified that she was able to see the tissue box on the desk in front of her at the hearing and was able to see him on the screen, she was able to see a paper clip on a desk, work on small craft and large projects and was able to see differences in some colors but could not seen differences in difference shades of the same color. Additionally, the ALJ pointed out that while Plaintiff reported having problems with seeing things in the distance, she also testified that she can see the house across the street from where she lives.   The ALJ also noted that while Plaintiff reported

experiencing occasional eye fatigue, pain and related headaches, she also reports that she rests her eyes and that she takes Tylenol for the headaches.  T. 68.

Further, the ALJ compared Plaintiff's alleged pain and symptoms with her testimony related to her daily activities.  He discussed that Plaintiff reported being able to cook, clean, bathe and dress herself daily, and that she attends full-time regular classes at school where she reads with the assistance of a magnifying glass.  He also pointed out that Plaintiff reported that she helps her mother take care of her brothers by making sure they do not cause a mess in the house and changing their diapers. T. 68.

It is worth noting that the ALJ did not entirely discount Plaintiff's subjective complaints of pain and related symptoms when assessing her RFC.  Rather, the ALJ determined that Plaintiff was able to perform a full range of work, but that she was specifically limited to occupations that do not require near visual acuity. T. 75.  Accordingly, Plaintiff's argument that the ALJ failed to properly assess her subjective complaints is rejected.

Finally, the Court finds no merit to Plaintiff's contention that the ALJ's credibility assessment is flawed because he failed to make credibility findings with respect to the testimony of Plaintiff's mother.  "As a fact-finder, an ALJ is free to accept or reject the testimony of a parent." F.S. v. Astrue, 2012 U.S. Dist.

LEXIS 18865, 2012 WL 514944, at * 19 (N.D.N.Y. Feb. 15, 2012).  It is evident from the text of the ALJ's decision that he considered the lay witness testimony of Plaintiff's mother.  However, a finding that any witness is not credible must be set forth with specificity to allow for proper review of the record.  Id.

Here, the ALJ summarized Plaintiff's mother's testimony at page 69 of the administrative transcript, specifically noting her testimony that: Plaintiff cannot see small prints, she is clumsy, that she trips two to three times a week, that her eyes hurt after looking at something for an hour and will have to take Tylenol for pain, that she cannot wash dishes or vacuum because she is not able to see small particles on a plate or lint on the floor, that she cannot drive because she could not see the writing on the document to get a learners permit, and that her daughter's eye condition has not gotten worse but will not get better.  T. 69.  Although the ALJ did not expressly state the weight she afforded to Plaintiff's mother's testimony, he did discuss the testimony in such a way as to make it clear to a reviewer of the decision that, like Plaintiff's testimony, he afforded it some, but not great weight.  "[T]he evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that [s]he have mentioned every item of testimony presented to [her] or have explained why [s]he considered particular evidence unpersuasive or insufficient to lead

[her] to a conclusion of disability." <u>Mongeur</u>, 722 F.2d at 1040 (citing <u>Berry v. Schweiker</u>, 675 F.2d 464, 469 (2d Cir. 1982)).

Moreover, the Court notes that even if the ALJ did fully credit Plaintiff's mother's testimony -- a finding this Court does not make -- such a consideration would not impact the ALJ's determination that Plaintiff is not disabled because the evidence in the record, as a whole, does not support a finding of disability. Statements alone cannot be conclusive evidence of disability; instead, "[m]edical signs and laboratory findings, established by medically acceptable clinical or laboratory diagnostic techniques, must show the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 416.929(b).

Therefore, any error in failing to assign a specific weight to the testimony of Plaintiff's mother is a harmless error. <u>See Zabala v. Astrue</u>, 595 F.3d 402, 409 (2d Cir. 2010). "Where application of the correct legal principles to the record could lead only to the same conclusion, there is no need to require agency consideration.") (internal quotation omitted).

In sum, the Court finds that the ALJ's credibility assessment with respect to the testimony of Plaintiff and her mother is supported by substantial evidence and does not warrant remand.

**CONCLUSION**

The Commissioner's Motion for Judgment on the Pleadings is granted, the Plaintiff's motion is denied, and the Complaint is dismissed in its entirety with prejudice.

**IT IS SO ORDERED.**

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge


DATED:    June 6, 2014
          Rochester, New York